**No. 11-16816**

---

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

---

**JOHN SCHLEGEL and CAROL ROBIN )**
**SCHLEGEL on behalf of themselves )**
**and all others similarly situated, )**
                             **)**   Appeal From:
        Plaintiffs-Appellants **)**   D.C. No. 10-cv-5679
                             **)**   **Northern District of**
   v.                         **)**   **California,**
                             **)**   **San Francisco Division**
**WELLS FARGO BANK, N.A., )**
                             **)**
        Defendant-Appellees. **)**

---

Appeal from the United States District Court
For the Northern District of California
The Honorable Charles R. Breyer, Presiding

---

## REPLY BRIEF OF PLAINTIFFS-APPELLANTS

---

S. Chandler Visher
Law Offices of S. Chandler Visher
44 Montgomery Street, Suite 3830
San Francisco, CA 94104
(415) 901-0500
chandler@visherlaw.com

Daniel M. Harris
Anthony P. Valach, Jr.
The Law Offices of
Daniel Harris
150 N. Wacker Dr., Ste. 3000
Chicago, IL 60606
312-960-1802
lawofficedh@yahoo.com

# TABLE OF CONTENTS

**I. PLAINTIFFS HAVE STATED A CLAIM UNDER THE FDCPA ... 1**

**A. THE SCHLEGELS' ALLEGED OBLIGATIONS TO WELLS FARGO CONSTITUTED A DEBT WITHIN THE MEANING OF THE FDCPA .................................................................. 1**

1. Plaintiffs Faced Personal Liability.................................................. 2
2. Defendant Threatened Plaintiffs With Personal Liability.................. 3
3. Obligations Enforceable *In Rem* Are Debts...................................... 6

**B. WELLS FARGO WAS ATTEMPTING TO COLLECT A DEBT WITHIN THE MEANING OF THE FDCPA ................................... 9**

**C. PLAINTIFFS ADEQUATELY ALLEGED THAT WELLS FARGO IS A DEBT COLLECTOR WITHIN THE MEANING OF THE FDCPA .................................................................. 14**

**II. PLAINTIFFS HAVE A CLAIM UNDER THE ECOA ................... 21**

**CONCLUSION .............................................................................. 28**

**CERTIFICATE OF SERVICE ....................................................... 29**

## TABLE OF AUTHORITIES

**CASES**

*Anderson v. United Finance Company*, 666 F.2d 1274 (9th Cir. 1982)... 23,24

*Arruda v. Sears, Roebuck & Co.*, 310 F.3d 13 (1st Cir. 2002).................. 3, 6

*Baker v. G.C. Services Corp.*, 677 F.2d 775 (9th Cir. 1982)......................... 5

*Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C.*, 111 F.3d 1322
    (7th Cir. 1997)................................................................................. 7

*Bush v. Loanstar Mortgage Services, L.L.C.*, 286 F.Supp.2d 1210
    (N.D. Cal. 2003)............................................................................. 9

*Carey v. Piphus*, 435 U.S. 247, 254 (1978)................................................ 24

*Clark v. Capital Credit & Collection Serv.*, 460 F.3d 1162
    (9th Cir. 2006)............................................................................ 8, 14

*Cooper v. Federal Aviation Administration*, 622 F.3d 1016
    (9th Cir. 2010)............................................................................... 24

*Crossley v. Lieberman*, 868 F.2d 566 (3rd Cir. 1988)................................... 8

*De Dios v. International Realty & RC Investments*, 641 F.3d 1071
    (9th Cir. 2011).............................................................................. 16

*Donohue v. Quick Collect, Inc.*, 592 F.3d 1027 (9th Cir. 2010) ................. 10

*F.T.C. v. Check Investors, Inc.*, 502 F.3d 159 (3rd Cir. 2007)..................... 20

*Fischl v. General Motors Acceptance Corp.*, 708 F.2d 143
    (5th Cir. 1983).............................................................................. 25

*Fox v. Citicorp Credit Services, Inc.*, 15 F.3d 1507 (9th Cir. 1994).............. 9

*Gburek v. Litton Loan Servicing LP*, 614 F.3d 380 (7th Cir. 2010).......... 8,11

*In Re Martinez*, 311 F.3d 1272 (11th Cir. 2002) ......................................... 12

*In Re Maxwell*, 281 B.R. 101 (Bkrtcy.D.Mass 2002) .................................. 10

*Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 130 S.Ct. 1605, (2010) ....................................................................................................... 10

*Kaltenbach v. Richards*, 464 F.3d 524 (5th Cir. 2006) ............................... 11

*Lyon v. Chase Bank USA, N.A.*, 656 F.3d 877 (9th Cir. 2011) .................... 15

*McCullough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939 (9th Cir. 2011) ......................................................................................... 11

*McKinney v. Cadleway Properties, Inc.*, 548 F.3d 496 (7th Cir. 2008) ....... 20

*Oppong v. First Union Mortgage Corporation*, 215 Fed.Appx. 114 (3rd Cir. 2007) ............................................................................ 9, 14, 18, 19

*Piper v. Portnoff Law Associates, Ltd.*, 396 F.3d 227 (3rd Cir. 2005) ......... 12

*Romea v. Heiberger & Associates*, 163 F.3d 111 (2d Cir. 1998) ................. 12

*Romine v. Diversified Collection Services, Inc.*, 155 F.3d 1142 (9th Cir. 1998) ......................................................................................... 18

*Ross v. RJM Acquisitions Funding LLC*, 480 F.3d 493 (7th Cir. 2007) ......... 5

*Ruth v. Triumph Partnerships*, 577 F.3d 790 (7th Cir. 2009) ..................... 19

*Treadway v. Gateway Chevrolet Oldsmobile Inc.*, 362 F.3d 971, 975 (7th Cir. 2004) ................................................................................... 22,25

*Wilson v. Draper & Goldberg,* 443 F.3d 373 (4th Cir. 2006) ......... 7, 8, 12, 14

**STATUTES**

15 U.S.C. § 1691(d)(6) ............................................................................. 21

15 U.S.C. § 1692a(5) ............................................................................. 5, 7

15 U.S.C. § 1692a(6) ................................................................................. 15

## OTHER AUTHORITIES

Federal Reserve Board Official Commentary on Reg. B
 Paragraph 2(c)(2)(ii)(2)Paragraph 2(c)(2)(ii)(2) ...................................... 26

## REGULATIONS

12 C.F.R. § 202.17(c) ................................................................... 27

12 C.F.R. § 202.2(s). ................................................................... 27

Plaintiffs John and Carol Robin Schlegel respectfully submit this reply brief in support of their appeal.  As explained more fully below, Wells Fargo is a debt collector as defined in the FDCPA and was attempting to collect an alleged debt when it made false and misleading representations to plaintiffs.  Furthermore, Wells Fargo took adverse action within the meaning of the Equal Credit Opportunity Act when it denied the existence of the Schlegels' loan modification agreement, effectively revoked the agreement, accelerated their loan and took various actions that deprived the Schlegels of their benefits under the agreement.

## I.   PLAINTIFFS HAVE STATED A CLAIM UNDER THE FDCPA

### A.   THE SCHLEGELS' ALLEGED OBLIGATIONS TO WELLS FARGO CONSTITUTED A DEBT WITHIN THE MEANING OF THE FDCPA

Wells Fargo argues that since the Schlegels' personal obligation to pay the mortgage loan was discharged in their bankruptcy, the only risk they faced if they failed to pay their mortgage was loss of their home, and therefore the Schlegels had no consumer "debt" triggering application of the Fair Debt Collection Practices Act. (Appellee's Brief, (hereinafter "Response Br.")) at pgs. 10-15.  This argument should be rejected for a variety of reasons.

### 1.     Plaintiffs Faced Personal Liability

Wells Fargo's argument is based on an incorrect premise.  In fact, plaintiffs did face personal liabilities to Wells Fargo on their modified mortgage loan.  To begin with, this Court may take judicial notice that in the bankruptcy the Schlegels had, on the "Individual Debtor's Statement of Intention" for the Wells Fargo mortgage loan, checked the box beside "Reaffirm the debt."[1]  Moreover, the loan modification agreement recites that "Borrower received the consent of the United States Bankruptcy Court or equivalent, to modify the mortgage ...." (Excerpts of Record, (hereinafter "EOR") at 22).   A natural inference from this recital, together with the election to reaffirm in the bankruptcy filing, is that some portions of the mortgage loan, as modified by the modification agreement, were reaffirmed and not discharged in bankruptcy.

In addition, whatever the status of pre-discharge debts, the bankruptcy discharge certainly did not excuse plaintiffs from liabilities to Wells Fargo arising after the discharge, such as for escrow deposits, late fees, attorneys' fees and other charges.  This is made clear in paragraph 8 of the loan modification agreement which states: "Borrower also will comply with all

---

[1]     For the Court's convenience, a copy of this document – a public judicial record – may be found after the last page of this brief.

2

other covenants, agreements, and requirements of the Security Instrument, included without limitation, the Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds and all other payments that are required by the Security Instrument ...." (EOR at 24).  Paragraph 9 of the loan modification agreement also tells the Schlegels that in case of default Wells Fargo's "remedies may include the recovery of reasonable attorney's fees actually incurred, plus legal expense and expenses for entering on the Property to make repairs in any foreclosure action filed to enforce the Lender lien." (EOR at 25).  Thus, it is simply not true the Schlegels had no personal obligations to Wells Fargo arising out of their loan modification agreement or after their bankruptcy.

Thus, the present case is distinguishable from *Arruda v. Sears, Roebuck & Co.*, 310 F.3d 13 (1st Cir. 2002) cited in Wells Fargo's brief.  In *Arruda*, the plaintiffs faced no possible personal liability, whereas here the plaintiffs did face personal liability.

### 2.    Defendant Threatened Plaintiffs With Personal Liability

The present case is distinguishable from *Arruda* in another crucial respect.  In *Arruda*, the communications sent by the debt collector made it clear that the plaintiffs faced no personal liability.  Here, by contrast,

3

communications sent to plaintiffs by or on behalf of Wells Fargo threatened the plaintiffs with personal liability.

More specifically, the first erroneous default notice, which was sent to the Schlegels before their bankruptcy discharge (although after the loan modification agreement), indicated that they faced personal liability. The letter of July 19, 2010 said:

> Dear Borrower(s):
>
> Our records indicate that your loan is in default for failure to make payments due. Unless the payments on your loan can be brought current by August 18, 2010, it will become necessary to require immediate payments in full (also called accelerations) of your Mortgage Note and pursue the remedies provided for in your Mortgage or Deed of Trust, which include foreclosure.
>
> To correct the default you must pay the total delinquency against your account, which as of today's date is:
>
> | | |
> |---|---|
> | Past Due Payments | $4,500.88 |
> | Late Charge Balance | $130.56 |
> | Other Fees | $60.00 |
> | Unapplied Funds | -$458.24 |
> | **Total Delinquency as of July 19, 2010** | **$4,233.20** |

EOR at 26.

The letter from Wells Fargo's foreclosure counsel of December 22, 2010 said:

> Dear Borrower:
>
> This firm has been retained by **Wells Fargo Home Mortgage** to advise you that you are in default under the terms of your promissory

4

note and mortgage-because of your failure to pay amounts due under your note and mortgage. This letter is being sent to advise you of the action you must take to cure the default and to provide you with notices required by law, which are listed on subsequent pages of this letter.

***

If you do not bring your account current on or before **January 24, 2011, Wells Fargo Home Mortgage**, **may file an action for the money due or take steps to terminate your ownership** in the real property by requiring payment in full of the loan and commencing a foreclosure proceeding or other action to foreclose the mortgage. Full payment of the loan includes, but is not limited to, the principal balance, interest and all other charges and costs due under the terms of the Note and Mortgage.

EOR at 33-34. (emphasis added)

Clearly the threat was in the alternative, one of which was to "file an action  for the money due," which clearly asserts personal liability. As it happens, the Schlegels did not in fact owe the money being demanded of them by Wells Fargo. But that does not allow Wells Fargo to escape liability under the FDCPA. The FDCPA's definition of "debt" includes "any obligation or **alleged** obligation of a consumer" 15 U.S.C. § 1692a(5) (emphasis added). *See Ross v. RJM Acquisitions Funding LLC*, 480 F.3d 493, 495 (7th Cir. 2007) ("Dunning people for their discharged debts ... is prohibited by the Fair Debt Collection Practices Act"); *Baker v. G.C. Services Corp.*, 677 F.2d 775, 777 (9th Cir. 1982) ("The Act is designed to

protect consumers who have been victimized by unscrupulous debt collectors, regardless of whether a valid debt actually exists").

### 3.    Obligations Enforceable *In Rem* Are Debts

Wells Fargo's argument should be rejected for other reasons as well. Even as to pre-discharge debt, the loan modification agreement imposes obligations on the Schlegels through such phrases as:

> The Borrower shall make monthly payments of principal and interest of U.S. $795.58 (not including escrow deposit), beginning on 08/01/10 and continuing thereafter on the same day of each succeeding month until Lender has received all principal and interest payable under the Note and Security Instrument.

EOR at 23.

The phrase "Borrower shall make monthly payments" is the language of an obligation. It was the lack of such an "obligation" to pay money that was critical in *Arruda. See Arruda*, 310 F.3d at 23. Whether this obligation is enforceable *in personam* or only *in rem*, it should still be considered a "debt" within the meaning of the FDCPA. The statute defines "debt" to mean:

> any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment.

15 U.S.C. § 1692(a)(5). *See Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C.*, 111 F.3d 1322, 1325 (7th Cir. 1997) ("the plain language of the Act defines 'debt' quite broadly as 'any obligation to pay arising out of a [consumer] transaction'").

There is nothing in the statutory definition of "debt" which excludes obligations solely enforceable through *in rem* proceedings and no reason to read such an exclusion into the law. A decision of the Court of Appeals for the Fourth Circuit is instructive on this point. In *Wilson v. Draper & Goldberg,* 443 F.3d 373 (4th Cir. 2006), the Fourth Circuit rejected the defendant's claim that a mortgage debt enforceable *in rem* was not a debt within the meaning of the FDCPA. In *Wilson,* a law firm had been retained by Chase, the mortgage holder, "to foreclose on Wilson's property due to her alleged failure to make mortgage payments." *Id.* at 374. One letter defendants sent to the plaintiffs said that "[t]his letter is an attempt to collect a debt" while another one "expressly stated that Defendants were not 'debt collectors' or acting in connection with the collection of a 'debt.'" Id. at pp. 374 – 375. The Fourth Circuit stated:

> We disagree with Defendants' argument that they were not acting in connection with a 'debt.' Defendants notified Wilson that she was in 'default in [her] Deed of Trust Note payable to the Lender ... [and] that the Lender [had] accelerated the debt.' J.A. 43 (emphasis added). Defendants informed Wilson that her failure to make mortgage payments entitled Chase to immediate payment of the balance of her

loan, as well as fees, penalties, and interest due. These amounts are all 'debts' under the Act, because they were 'obligations ... to pay money arising out of a transaction in which the ... property ... which [is] the subject of the transaction [is] primarily for personal, family, or household purposes.' 15 U.S.C.A. § 1692a(5).

*Id.* at 376.

The *Wilson* decision is consistent with law of other circuits. The FDCPA has been repeatedly applied to efforts to collect consumer obligations through the threat or initiation of *in rem* actions. *See e.g. Gburek v. Litton Loan Servicing LP*, 614 F.3d 380, 386 (7th Cir. 2010) ("Gburek was in default on her mortgage loan, and Litton's letter offered to discuss 'foreclosure alternatives' * * * Though it did not explicitly ask for payment, it was an offer to discuss Gburek's repayment options, which qualifies as a communication in connection with an attempt to collect a debt"); *Crossley v. Lieberman*, 868 F.2d 566 (3rd Cir. 1988) (holding defendant to be a debt collector based in part on the volume of *in rem* mortgage foreclosure actions he had filed).

This Court has said that the FDCPA should be construed liberally in favor of consumers. *See Clark v. Capital Credit & Collection Serv.*, 460 F.3d 1162, 1176 (9th Cir. 2006) ("'Because the FDCPA ... is a remedial statute, it should be construed liberally in favor of the consumer'"). Accordingly, this Court should follow precedents from other circuits holding

8

obligations enforceable in rem to be debts within the meaning of the FDCPA. *See also Oppong v. First Union Mortgage Corporation*, 215 Fed.Appx. 114, 119 (3rd Cir. 2007) ("Wells Fargo's remaining argument ... that § 1692(a)(6) excludes 'security enforcement activities' from the definition of debt collector … is squarely foreclosed by our precedents").

### B.   WELLS FARGO WAS ATTEMPTING TO COLLECT A DEBT WITHIN THE MEANING OF THE FDCPA

In a closely related argument, Wells Fargo contends that it was not attempting to collect a debt within the meaning of the FDCPA. (Response Br. at pgs. 15-17). Rather, the bank contends, it was simply preparing to enforce a lien. This argument should be rejected.

First, the letters quoted above show that Wells Fargo did send letters to the Schlegels demanding money from them. These demands for payment were the type of debt collector demand letters to which the FDCPA has regularly been applied. *See e.g. Fox v. Citicorp Credit Services, Inc.*, 15 F.3d 1507 (9th Cir. 1994). That they happened to concern a home loan in no way takes them out of the statute. "A loan to purchase one's residence is clearly a debt within the meaning of the FDCPA." *Bush v. Loanstar Mortgage Services, L.L.C.*, 286 F.Supp.2d 1210, 1213 (N.D. Cal. 2003). The FDCPA is regularly applied to attempts to collect mortgage debts. *See e.g. Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 130 S.Ct.

9

1605, 1608 (2010) (applying FDCPA in a case arising out of a mortgage foreclosure and noting that the law "prohibits debt collectors from making false representations as to a debt's character, amount or legal status"); *In Re Maxwell*, 281 B.R. 101, 119 (Bkrtcy.D.Mass 2002) (mortgage servicer violated FDCPA "because it demanded amounts of money from the Debtor that she did not owe").

In 2010, this Court held "a complaint served directly on a consumer to facilitate debt-collection efforts is a communication subject to the requirements of §§ 1692e and 1692f." *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1031-32 (9th Cir. 2010).   If a complaint is subject to the FDCPA then, certainly, the letters sent to the Schlegels in July and December demanding money from them, quoted above, are subject to the statute.

It is true that some of Wells Fargo's other communications contained disclaimers that *if* the debts were discharged in bankruptcy it was not seeking to impose personal liability.  But the Schlegels could not take comfort in those disclaimers since (as discussed earlier) the Schlegels did face personal liabilities arising out of the loan modification agreement that had *not* been discharged in bankruptcy.  In any event, the July and December letters sent to the Schlegels did threaten them with personal liability.  That should be enough.  As this Court has said: "The FDCPA measures a debt

collector's behavior according to an objective 'least sophisticated debtor' standard." *McCullough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939, 952 (9th Cir. 2011). "This standard 'ensure[s] that the FDCPA protects all consumers, the gullible as well as the shrewd ... the ignorant, the unthinking, and the credulous.'" *Id*. at 952.

Moreover, the letters that Wells Fargo sent to the Schlegels in November (EOR at 27-28), which threatened them with foreclosure if they did not pay money allegedly owed, should also be considered attempts to collect a debt under the FDCPA.  Wells Fargo was trying to get the Schlegels to pay money to Wells Fargo to satisfy an alleged obligation through the threat of taking away their home if the money was not forthcoming. Defendant's argument that efforts to enforce a lien are not subject to the FDCPA runs counter to the law of sister circuits. *See e.g. Gburek v. Litton Loan Servicing LP*, 614 F.3d 380, 382 (7th Cir. 2010) ("Gburek's mortgage was in default, and the text of the letters indicate they were sent to induce her to settle her mortgage-loan debt in order to avoid foreclosure.  The complaint thus sufficiently alleges communications that were 'sent in connection with an attempt to collect a debt,' ... and in violation of the FDCPA"); *Kaltenbach v. Richards*, 464 F.3d 524, 529 (5th Cir. 2006) ("a party who satisfies § 1692a(6)'s general definition of a 'debt

11

collector' is a debt collector for the purposes of the entire FDCPA even when enforcing security interests"); *Wilson v. Draper & Goldberg,* 443 F.3d 373, 376 (4th Cir. 2006) ("We see no reason to make an exception to the Act when the debt collector uses foreclosure instead of other methods.")

The notion that lien enforcement is not debt collection has been rejected again and again. *See also Piper v. Portnoff Law Associates, Ltd.*, 396 F.3d 227, 234, 236 (3rd Cir. 2005) ("the fact that challenged communications come in the context of enforcing a lien is irrelevant" * * * "We agree with the District Court that '[i]f a collector were able to avoid liability under the FDCPA simply by choosing to proceed *in rem* rather than *in personam*, it would undermine the purpose of the FDCPA"); *In Re Martinez*, 311 F.3d 1272 (11th Cir. 2002) (adopting district court opinion, found at 271 B.R. 696 (S.D Fla. 2001), which found FDCPA applicable to the service of a mortgage foreclosure packet); *Romea v. Heiberger & Associates*, 163 F.3d 111, 116 (2d Cir. 1998) (letter to tenant threatening to initiate summary eviction proceedings unless tenant paid back rent constituted a "communication" for purposes of the FDCPA; "Heiberger makes no attempt to deny that its aim in sending the letter was at least in part to induce Romea to pay the back rent she allegedly owed. As a result, the fact that the letter also served as a prerequisite to commencement of the

Article 7 process is wholly irrelevant to the requirements and applicability of the FCCPA").

The decisions of sister circuits should be followed here. It is very common for debt collectors to attempt to collect consumer debts through the threat of *in rem* proceedings. After all, threats of foreclosure typically have more impact on consumers than other debt collection efforts because most people are afraid of losing their home. Also, in many jurisdictions, home mortgages can only be enforced through *in rem* proceedings.

To say that these debt collection efforts are not subject to the FDCPA -- either because a consumer debt that is enforceable only through *in rem* proceedings is not really a debt or because threats to enforce a lien are not really attempts to collect a debt -- would be contrary to both the language and purpose of the statute. Moreover, it would create an enormous loophole in the law, permitting the very abuses the FDCPA was enacted to prevent. As the Court of Appeals for the Fourth Circuit said, in rejecting an argument similar to that advanced here by Wells Fargo:

> Defendants' argument, if accepted, would create an enormous loophole in the Act immunizing any debt from coverage if that debt happened to be secured by a real property interest and foreclosure proceedings were used to collect the debt. We see no reason to make an exception to the Act when the debt collector uses foreclosure instead of other methods.

*Wilson*, 443 F.3d at 376.

The matter seems clear, but if there is doubt, that doubt should be resolved in favor of plaintiffs. *See Clark v. Capital Credit & Collection Services, Inc.*, 460 F.3d 1162, 1176 (9th Cir. 2006) ("'Because the FDCPA ... is a remedial statute, it should be construed liberally in favor of the consumer'").

### C.    PLAINTIFFS ADEQUATELY ALLEGED THAT WELLS FARGO IS A DEBT COLLECTOR WITHIN THE MEANING OF THE FDCPA

Wells Fargo next argues that it is not a "debt collector" within the meaning of the FDCPA. (Response Br. at pgs. 18-27). This argument is without merit.  Whether Wells Fargo is a debt collector is an issue of fact. Paragraph 39 of the Amended Complaint alleged Wells Fargo was a debt collector within the meaning of the FDCPA and used the instrumentalities of interstate commerce in the business of collecting debts. (EOR at 9-10). It is at least plausible that plaintiffs will be able to meet its factual burden, given that Wells Fargo has been found to be a debt collector in a case from the Third Circuit which was cited in the Amended Complaint. *See Oppong v. First Union Mortg. Corp.*, 215 Fed.Appx. 114, 119 (3rd Cir. 2007) ("the District Court was correct to conclude that Wells Fargo is a debt collector under the FDCPA").

This ought to have enough to survive a motion to dismiss.  As this Court recently said: "In determining whether a complaint states a plausible claim to relief, a court must 'accept the plaintiffs' allegations as true and construe them in the light most favorable to plaintiffs.'" *Lyon v. Chase Bank USA, N.A.*, 656 F.3d 877, 885 (9th Cir. 2011).  An allegation that Wells Fargo is a debt collector, where it has been held to be such in other cases, is clearly at least plausible.

In any event, the arguments that Wells Fargo advances on this issue do not withstand analysis.  As noted in plaintiffs' opening brief, the FDCPA begins with a broad initial definition of the term "debt collector" -- which includes both parties that collect debts they own and debts owned by others -- and then carves out specific exceptions.  On appeal, Wells Fargo does not claim to fall within any of the exclusions from the general definition of "debt collector" in the FDCPA, such as the "creditor" exception.  Instead, the bank argues it falls outside the broad initial definition of "debt collector," which is:

> any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, **or** who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

15 U.S.C. § 1692a(6) (emphasis added).

The statute is phrased in the disjunctive:  A person is as a debt collector if that person uses the mails or instrumentalities of interstate commerce "in any business the principal purpose of which is the collection of any debts" **or** if the person using the mails or instrumentalities of interstate commerce "regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to owed or due another." *See De Dios v. International Realty & RC Investments*, 641 F.3d 1071, 1073 (9th Cir. 2011) ("The Act broadly applies to any business that uses an instrumentality of interstate commerce to collect a debt on its own or another's behalf").

Plaintiffs respectfully submit that the evidence will show that Wells Fargo satisfies both prongs of the definition of a debt collector.  First, Wells Fargo uses the mails and instrumentalities of interstate commerce and is engaged in a "business the principal purpose of which is the collection of any debts," both debts owed to Wells Fargo and debts owed to others.  For example, Wells Fargo is engaged in the business of servicing mortgages, the principal purpose of which is the collection of mortgage debts and therefore falls within the broad initial statutory definition of a "debt collector."  It is no doubt true, that Wells Fargo also engages in other banking activities, such as acquiring or originating the loans on which Wells Fargo seeks to collect.

16

But the statute does not require that a defendant's sole business be the collection of debts. It is enough that the defendant be engaged in a "business the principal purpose of which is the collection of any debts" and Wells Fargo qualifies on this score.

Wells Fargo also satisfies the second prong of the statutory definition. Wells Fargo uses the mails and instrumentalities of interstate commerce and "regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to owed or due another." For example, the evidence will show that many mortgages that Wells Fargo services are owned by securitized trusts so that Wells Fargo is regularly collecting or attempting to collect on debts owned by other parties.

Indeed, Wells Fargo apparently conceded on appeal in the *Oppong* case that it collected debts due others but argued that this activity was not extensive enough to trigger coverage under the statute, an argument that the Third Circuit rejected. In describing Wells Fargo's arguments on appeal, the Court of Appeals for the Third Circuit said:

> Wells Fargo's primary argument appears to be that, because the proportion of its business that involves collecting others debts is so small in relation to its other business of originating mortgages, as a matter of law it does not "regularly" collect[] debts.

* * *

17

> Wells Fargo wishes us to disregard these analyses, as well as the common usage of the term "regularly" to find that even though it regularly "collects ... debts owed to another," it should not be considered a debt collector because it also engages in other activities. We decline that invitation.

*Oppong*, 215 Fed.Appx. at 119.

The Third Circuit rejected the argument that the debt collection activity must be large in relation to other parts of Wells Fargo's business, relying in part on *Romine v. Diversified Collection Services, Inc.*, 155 F.3d 1142 (9th Cir. 1998), in which this Court held Western Union to be a debt collector based on "Western Union's Automated Voice Telegram ... service, in which Western Union obtains debtors' telephone numbers by eliciting responses to personal delivery telegrams, then disseminates the unlisted numbers to creditors and collection agencies." *Id*. at 1143. The Third Circuit cited *Romine* and noted: "The Ninth Circuit, without inquiring into the proportion of its business [that] consisted of debt collection activities found that Western Union 'regularly' collected debts because it engaged in debt collection in the usual course of its business." *Oppong*, 215 Fed.Appx. at 119. The Third Circuit concluded that "the District Court was correct to conclude that Wells Fargo is a debt collector under the FDCPA." *Id*. at 119.

Thus, taking the plausible allegations of the Amended Complaint as true and construing them in the light most favorable to plaintiffs, Wells

Fargo falls well within the general definition of debt collector in §
1692a(6)(A). Indeed, Wells Fargo satisfies both prongs of § 1692a(6)(A)
and it is only necessary that Wells Fargo satisfy one. And since Wells Fargo
is not seeking to invoke any of the statutory exceptions to the general
definition, there are no additional hurdles plaintiffs have to surmount to
show that Wells Fargo is a debt collector for purposes of the FDCPA.

In particular, it does not matter whether Wells Fargo acquired the
Schlegels' loan for the purposes of facilitating collection by another or for
the purpose of collecting on its own account. The definition of "debt
collector" in § 1692a(6)(A) covers both possibilities. There is no
requirement with respect to either prong of the definition that the particular
debt in question have been acquired for the purposes of collection for
another. Thus, sister circuits are correct that "a party that seeks to collect on
a debt that was in default when acquired is a debt collector under the
FDCPA, 'even though it owns the debt and is collecting for itself.'" *Ruth v.
Triumph Partnerships*, 577 F.3d 790, 797 (7th Cir. 2009). *See also Oppong*,
215 Fed.Appx. at 119 (holding Wells Fargo was a debt collector under the
second prong § 1692a(6)(A) in a case in which Wells Fargo was seeking to
collect on a debt it had purchased for its own account when the debt was in
default).

19

In its brief, Wells Fargo asks this Court to create a conflict with decisions of sister circuits by fashioning a rule that a party can be a debt collector under the second prong of § 1692a(6)(A) only if the party acquired the particular debt at issue in the case for the purpose of facilitating collection by another. (<u>Response Br.</u> at p. 26). But the statute simply does not contain the requirement that Wells Fargo is seeking. On the contrary, a plain reading of the statute shows that the sister circuits are correct. A party is a debt collector for purposes of the FDCPA, even though the party owns the debt and is collecting on its own account, if the party satisfies the general definition of debt collector in Section 1692a(6)(A) -- as Wells Fargo does here -- and if the debt was assigned to the party when the debt was in default. *See also McKinney v. Cadleway Properties, Inc.*, 548 F.3d 496, 501 (7th Cir. 2008) ("the purchaser of a debt in default is a debt collector for purposes of the FDCPA even though it owns the debt and is collecting for itself"); *F.T.C. v. Check Investors, Inc.*, 502 F.3d 159, 173 (3rd Cir. 2007) ("one attempting to collect a debt is a 'debt collector' under the FDCPA if the debt in question was in default when acquired").[2]

---

[2]     Defendant's assertion that the quoted language in these cases is a "mistake" and a "virus" does not show that the analysis made in these cases is in error. Response Br., p. 26, n. 13.

## II.    <u>PLAINTIFFS HAVE A CLAIM UNDER THE ECOA</u>

Plaintiffs also charged Wells Fargo with violation of the Equal Credit Opportunity Act for taking adverse actions against them without providing the notices and statement of reasons required by the statute.  The district court dismissed this claim, on the ground that Wells Fargo's actions were not adverse actions but simply ministerial errors. (<u>EOR</u> at 44;5-20).  In their opening brief, plaintiffs demonstrated that an exception for "ministerial errors" is inconsistent with the ECOA and with Regulation B promulgated by the Federal Reserve Board pursuant to the statute. (<u>Appellants' Brief</u> (hereinafter "<u>Opening Br.</u>", pgs. 31-33).

In its brief in this Court, Wells Fargo backs away from the district court's "ministerial errors" theory.  Instead, Wells Fargo argues that its failure to implement the loan modification agreement was a possible breach of contract, but not an adverse action, and that the erroneous default notices sent to the Schlegels were similarly "empty words, not adverse action." (<u>Response Br.</u> at pgs. 30-31).  This argument should be rejected.

Wells Fargo's argument is inconsistent with a common sense reading of the statute.  According to the ECOA, "the term 'adverse action' means a denial or revocation of credit, a change in the terms of an existing credit arrangement, or a refusal to grant credit in substantially the amount or on

substantially the terms requested." 15 U.S.C. § 1691(d)(6). These are actions that are normally accomplished, or at least evidenced, through the use of words and do not require subsequent physical actions or evidence, such as the physical expulsion of debtors from their home.

For example, a creditor denies a loan application by saying that it is denied. A creditor revokes a credit arrangement by saying it is revoked. A creditor changes an existing credit arrangement by saying it is changed as, for example, Wells Fargo changed its credit arrangement with the Schlegels when it told them in the letter of December 20, 2010, that "the entire balance [on their loan] is due and payable." EOR at 31.

In its brief, Wells Fargo seems to concede that the filing of a foreclosure suit would be an adverse action (Response Br. at pgs. 28-29), but argues that failing to implement a loan modification agreement, denying its existence and accelerating a loan are not adverse actions. There is nothing in the law that justifies the distinction Wells Fargo tries to make.

The words "adverse action" in the ECOA have been construed broadly in order to fulfill the consumer protection purposes of the statute. *See e.g. Treadway v. Gateway Chevrolet Oldsmobile Inc.*, 362 F.3d 971, 975 (7th Cir. 2004) ("an automobile dealership's unilateral decision not to submit a credit application to any lender constitutes an 'adverse action' for

22

purposes of the ECOA"). Here, this Court need only follow the plain language of the law to conclude that plaintiffs were entitled to adverse action notices, which they did not get.

Wells Fargo's "empty words" argument is also inconsistent with the fact that its words caused damages compensable under the ECOA. In *Anderson v. United Finance Company*, 666 F.2d 1274 (9th Cir. 1982) this Court held that under the ECOA: "Actual damages may include out-of-pocket monetary losses, injury to credit reputation, and **mental anguish**, humiliation or embarrassment." Id. at 1277 (emphasis added). This Court also held that, in addition to punitive damages which may be assessed when "the creditor acts in 'reckless disregard of the requirements of the law'" (id. at 1278), plaintiffs whose rights under the ECOA are violated are entitled to "attorneys fees." *Id*. at 1278. This Court said: "Plaintiffs who cause a creditor to halt an illegal practice should be compensated for their attorneys' fees." *Id*. at 1278.

In this case, Wells Fargo's adverse actions deprived plaintiffs of the peace of mind that they were entitled to under the loan modification agreement and caused them mental anguish, which this Court said was compensable damage in *Anderson*. The mental anguish injury was

23

particularly severe for Mr. Schlegel.  As explained in paragraph 29 of the

Amended Complaint:

> … Wells Fargo's actions ... had an especially profound influence on
> Mr. Schlegel, who suffers from post traumatic stress disorder (PTSD).
> ... The demands from Wells Fargo and thinking about what will
> happen if Wells Fargo forecloses on his home has caused Mr.
> Schlegel to have frequent panic attacks, and it is almost impossible for
> him not to think of these consequences throughout the day. To deal
> with the anxiety attacks Mr. Schlegel requested his doctors to double
> his daytime medication. Mr. Schlegel also has to take medication to
> let him sleep, but sometimes his sleep does not last through the night.
> Both of the Schlegels regularly wake in the night with thoughts of the
> uncertain future ....

EOR at 7.  In addition, the Schlegels had to engage counsel in order to cause

Wells Fargo to halt its illegal practice, and this Court said in *Anderson* that

in such circumstances attorneys' fee are recoverable under the ECOA.

Given that Wells Fargo's adverse actions inflicted injuries on

plaintiffs that are cognizable and redressable under the ECOA, it would be

inconsistent to say that Wells Fargo's actions were mere "empty words"

without any legal effect.  As this Court recently noted: "'Rights,

constitutional and otherwise, do not exist in a vacuum. Their purpose is to

protect persons from injuries to particular interests, and their contours are

shaped by the interests they protect.'" *Cooper v. Federal Aviation

Administration*, 622 F.3d 1016, 1034 (9th Cir. 2010), quoting *Carey v.

Piphus*, 435 U.S. 247, 254 (1978).  See also *Cooper*, 622 F.3d at 1030 ("To

recognize that the [Privacy] Act entitles one to actual damages for an adverse effect related to one's mental or emotional well-being, … while holding that one injured under the Act cannot recover actual damages for nonpecuniary injuries, would be an unreasonable construction of the Act").

Another problem with Wells Fargo's "empty words" theory is that it leads to results inconsistent with the goals of the statute. For example, the ECOA requires an adverse action notice, including a statement of reasons, in order to prevent problems from developing that might have to be redressed in subsequent litigation. *See Treadway*, 362 F.3d at 977, 978 ("In those cases where the creditor may have acted on misinformation or inadequate information, the statement of reasons gives the applicant a chance to rectify the mistake" * * * "The fact that victims may be able to seek redress after having already experienced discrimination does not fulfill the preventive purpose of the statute"); *Fischl v. General Motors Acceptance Corp.*, 708 F.2d 143, 146 (5th Cir. 1983) ("the ECOA was amended in 1976 to require creditors to furnish written notice of the specific reasons for adverse action taken against a consumer" * * * "these provisions were designed to fulfill the twin goals of consumer protection and education").

Yet under Wells Fargo's theory, a creditor could revoke a loan modification agreement in the absence of any default by the borrower,

without providing an adverse action notice because the "empty words" of the unjustifiable revocation would be subject to correction in later mortgage foreclosure litigation.  Similarly, under the theory of the statute that defendant urges upon this Court, a creditor could alter an existing credit arrangement, which is not in default, by accelerating a loan -- demanding immediate payment of the outstanding principal -- without having to provide an adverse action notice because the "empty words" of the acceleration notice would be subject to correction in later litigation.  The narrowing construction that Wells Fargo seeks to place on the phrase "adverse action" is thus inconsistent with both the purpose and language of the law.

Wells Fargo also argues that since debtors who are actually in default are not entitled to adverse action notices, creditors should not be required to send adverse action notices to debtors who are mistakenly thought to be in default. Response Br. at p. 33.  But there is no basis in the statute for creating such a loophole.  The fact that there is an exception for loans that *are* in default does not show there should be an exception for loans that are *not* in default.[3]

---

[3]     Moreover, expanding the delinquency exception so as to apply when a creditor mistakenly believes that a past default has not been cured would be inconsistent with Federal Reserve Board commentary to Regulation B, which contemplates that adverse actions based on past defaults (which is essentially what happened here) will require statutory notices. Paragraph

Wells Fargo's proposed expanded exception for adverse actions based on errors is particularly unjustified because the policy concerns underlying the argument – that creditors will make mistakes and won't realize that they are acting in error – have already been accommodated by the Federal Reserve Board through its rule making authority.   Regulation B provides a defense to liability under the ECOA for "inadvertent errors" -- 12 C.F.R. § 202.17(c) -- if the creditor can prove its "maintenance of procedures reasonably adapted to avoid such errors." 12 C.F.R. § 202.2(s).  Wells Fargo should make its defense under that regulation, if it can do so, and not ask this Court to eviscerate the statutory definition of "adverse action."

---

2(c)(2)(ii)(2) of the Official Board Commentary states: "The term adverse action does not include a creditor's termination of an account when the accountholder is currently in default or delinquent on that account. **Notification in accordance with § 202.9 of the regulation generally is required, however, if the creditor's action is based on a past delinquency or default on the account**." (Emphasis added).  This confirms that the delinquency exception is a narrow exception that should not be expanded beyond the words of the statute.

## CONCLUSION

Because of the foregoing, and for the reasons stated in plaintiffs' opening brief, the decision of the district court should be reversed.

Respectfully submitted,

s/ Daniel M. Harris
Attorney for Plaintiffs-Appellants

Daniel M. Harris
Anthony P. Valach, Jr. (Of Counsel)
The Law Offices of Daniel Harris
150 N. Wacker Drive, Suite 3000
Chicago, IL 60606
312-960-1802
lawofficedh@yahoo.com

S. Chandler Visher
2 Montgomery Street, Suite 3830
San Francisco, CA 94104
412-901-0500
chandler@visherlaw.com

## CERTIFICATE OF SERVICE

I, Anthony P. Valach, Jr., an attorney, hereby certify that on December 16, 2011, I will cause copies of the foregoing <u>Reply Brief of Plaintiffs-Appellants</u> to be filed and served electronically using this Court's ECF systems and sent by first class U.S. mail to:

Jan T. Chilton
Mark D. Lonergan
Michael J. Steiner
Jason M. Richardson
Severson & Werson, P.C.
One Embarcadero Center, Suite 2600
San Francisco, CA 94111

<u>/s Anthony P. Valach, Jr.</u>
Attorney for Plaintiffs-Appellants

29

B 8 (Official Form 8) (12/08)

# UNITED STATES BANKRUPTCY COURT

In re _John Joseph Schlegel_
_Carol Robin Schlegel_
Debtor

Case No. _____

Chapter 7

## CHAPTER 7 INDIVIDUAL DEBTOR'S STATEMENT OF INTENTION

**PART A** – Debts secured by property of the estate. *(Part A must be fully completed for EACH debt which is secured by property of the estate. Attach additional pages if necessary.)*

| | |
|---|---|
| **Property No. 1** | |
| **Creditor's Name:**<br>Wells Fargo Home Mortgage | **Describe Property Securing Debt:** HomE<br>6525 Jaeger Pl, Las Cruces NM 88012 |

Property will be *(check one)*:
- ☐ Surrendered
- ☑ Retained

If retaining the property, I intend to *(check at least one)*:
- ☐ Redeem the property
- ☑ Reaffirm the debt
- ☐ Other. Explain _____ (for example, avoid lien using 11 U.S.C. § 522(f)).

Property is *(check one)*:
- ☐ Claimed as exempt
- ☐ Not claimed as exempt

| | |
|---|---|
| **Property No. 2** *(if necessary)* | |
| **Creditor's Name:**<br>Franklin Capital Corp. | **Describe Property Securing Debt:**<br>2007 Ford F150 Pick-up |

Property will be *(check one)*:
- ☐ Surrendered
- ☑ Retained

If retaining the property, I intend to *(check at least one)*:
- ☐ Redeem the property
- ☑ Reaffirm the debt
- ☐ Other. Explain _____ (for example, avoid lien using 11 U.S.C. § 522(f)).

Property is *(check one)*:
- ☐ Claimed as exempt
- ☐ Not claimed as exempt

B 8 (Official Form 8) (12/08)                                                                                     Page 2

**PART B** – Personal property subject to unexpired leases. *(All three columns of Part B must be completed for each unexpired lease. Attach additional pages if necessary.)*

| Property No. 1 | | |
|---|---|---|
| **Lessor's Name:** | **Describe Leased Property:** | Lease will be Assumed pursuant to 11 U.S.C. § 365(p)(2): ☐ YES     ☐ NO |

| Property No. 2 *(if necessary)* | | |
|---|---|---|
| **Lessor's Name:** | **Describe Leased Property:** | Lease will be Assumed pursuant to 11 U.S.C. § 365(p)(2): ☐ YES     ☐ NO |

| Property No. 3 *(if necessary)* | | |
|---|---|---|
| **Lessor's Name:** | **Describe Leased Property:** | Lease will be Assumed pursuant to 11 U.S.C. § 365(p)(2): ☐ YES     ☐ NO |

_____ continuation sheets attached *(if any)*

**I declare under penalty of perjury that the above indicates my intention as to any property of my estate securing a debt and/or personal property subject to an unexpired lease.**

Date: 2/26/10 _____          _____
                                Signature of Debtor

                                _____
                                Signature of Joint Debtor